UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

PEGGY A. HALES,

      Plaintiff,

v.                                 Civil Action No. 4:11cv28

CITY OF NEWPORT NEWS,

JAMES D. FOX,
Newport News Chief of Police,

NEIL A. MORGAN,
Newport News City Manager,

OFFICER JUSTIN E. BRIGGS,

OFFICER DARRYL J. JOHNSON,

and

SGT. J. F. GAYLE,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on a motion to dismiss filed by defendants City of Newport News (the "City"), Newport News Chief of Police James D. Fox ("Fox"), Newport News City Manager Neil A. Morgan ("Morgan," and collectively with the City and Fox, the "City Defendants"), as well as motions to dismiss filed by Newport News Police Sergeant J.F. Gayle ("Gayle"), and Newport News Police Officer Justin E. Briggs

("Briggs").[1]  After examination of the briefs and the record, the Court determines that a hearing on the instant motions is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument.  Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated herein, the Court **GRANTS** the City Defendants' motion to dismiss in its entirety, and **GRANTS IN PART AND DENIES IN PART** Gayle's and Briggs' motions to dismiss.

## I.  FACTUAL ALLEGATIONS[2]

This matter arises out of a domestic dispute between Plaintiff and her husband, occurring on or about September 27, 2009.  While Plaintiff's husband was watching television, Plaintiff's cat knocked over her husband's mixed drink.  An argument between the spouses ensued, ending when Mr. Hales left the residence on his motorcycle.

Mr. Hales returned approximately thirty minutes later

---

[1] There is no indication in the record that Officer Darryl J. Johnson, listed as a defendant in the Complaint, has ever been served in this case.

[2] The facts recited herein are drawn from Plaintiff's Complaint. Such factual allegations are assumed true for the purpose of deciding the instant motions, but do not constitute factual findings for any other purpose.  See, e.g., Nemet Chevrolet, Ltd. v. Consumeraffairs.com, 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

accompanied by defendants Sergeant Gayle, Officer Briggs, and Officer Johnson. The police explained to Plaintiff that Mr. Hales had come to collect his guns and clothing and that he wished to leave the residence. Plaintiff asked to speak with Mr. Hales, but the police repeated that he wished to leave the residence, whereupon Plaintiff shut and locked the front door, barricaded the front door with a chair, and proceeded to lock the other doors. Mr. Hales thereafter retrieved a crowbar from a shed and used it to forcibly open the rear sliding glass door of the residence. Plaintiff asserts that she then "attempted to calm [Mr. Hales] down, stating, 'Honey, please don't do this', and she reached over and touched [Mr. Hales]'s left wrist with her right hand in a non-threatening manner, whereupon one of the Officers said, 'That's an assault and batter.'" Compl. ¶ 10.

Plaintiff further alleges that then, "[w]ithout warning or prior notice, OFFICER BRIGGS handcuffed [Plaintiff's] hands behind her back and placed her in a police cruiser." Id. ¶ 11. Plaintiff "immediately complained that the handcuffs were too tight on her right wrist and that the circulation on her right wrist and hand was being cut off, resulting in numbness in her right hand and fingers." Id. Plaintiff "continued to complain while en route to the police station; however, her complaints were ignored." Id.

Although Plaintiff repeatedly "begged" Officer Briggs to remove or loosen the handcuffs, Officer Briggs "ignored her requests, and [Plaintiff] was placed in a holding cell and left in handcuffs for approximately thirty (30) minutes." Id. ¶ 12. Thereafter, "upon appearing before the Magistrate, the handcuffs were removed." Id. Plaintiff was charged in state court with "assault and batter," was released on bond, and her criminal charge was ultimately dismissed. Id. ¶ 13. As a result of plaintiff's arrest and Briggs' use of excessively tight handcuffs, Plaintiff "sustained serious physical injuries and permanent injuries," required and will in the future require doctor and hospital expenses, became "lame, sick and disabled," and lost "time and income from her gainful employment." Id. ¶ 32.

## II.  PROCEDURAL HISTORY

Plaintiff filed her Complaint in the Circuit Court for the City of Newport News, Virginia, on or around December 28, 2010, alleging causes of action for: (1) deprivation of civil rights under color of state law; (2) intentional infliction of emotional distress; (3) assault; (4) battery; (5) false imprisonment; (6) negligence and/or gross negligence; and (7) violation of constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks $100,000 in compensatory damages and $300,000 in

punitive damages against all Defendants, jointly and severally, with interest, and demands a trial by jury.

The City Defendants, with the consent of Gayle and Briggs, removed the matter to this Court on February 2, 2011, invoking this Court's subject-matter jurisdiction over Plaintiff's constitutional and civil-rights claims pursuant to 28 U.S.C. § 1441.[3]  The City Defendants filed their motion to dismiss on that same day, and Sergeant Gayle filed his motion to dismiss on February 3, 2011.  Officer Briggs filed his motion to dismiss, along with an answer, on February 21, 2011.[4]  Plaintiff filed responses in opposition to the dismissal motions, and all such motions are now ripe for review.

### III. STANDARD OF REVIEW

#### A.   Rule 12(b)(6)

Rule 12(b)(6) permits a defendant to move for dismissal if the plaintiff has failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In assessing such a motion, a district court must "assume the truth of all facts

---

[3] The City Defendants' notice of removal alleges that "[u]pon information and belief, Officer Darryl J. Johnson has not been served and the return of service came back 'Not Found.'" (Removal Notice ¶ 1, Dkt. No. 1).  Officer Johnson has made no appearance in this matter since its removal.

[4] Since Officer Briggs filed an answer contemporaneously with his motion, the motion is properly regarded not as a motion to dismiss pursuant to Rule 12(b)(6), but instead as a motion for judgment on the pleadings pursuant to Rule 12(c).  See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009).

alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). While a district court must construe the facts in the light most favorable to the plaintiff, it is not obligated to accept a complaint's legal conclusions. See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991).

Construing the factual allegations in plaintiff's favor, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To satisfy such plausibility standard a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); see Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 555) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the

complaint to cross 'the line between possibility and plausibility of entitlement to relief.'").

As always, the above standard is applied in light of Rule 8(a)'s requirement of only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, although Rule 8(a) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S. Ct. at 1950.

### B.   Rule 12(c)

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  As noted above, although Officer Briggs' motion was filed pursuant to Rule 12(b)(6), it is properly considered a motion pursuant to Rule 12(c) because an answer was filed contemporaneously with such motion.  Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009).  However, this distinction has no practical effect on the Court's adjudication of Officer Briggs' motion, because "a motion under Rule 12(c) . . . is assessed under the same standard that applies to a Rule 12(b)(6) motion."  Id. (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

## IV. Discussion

### A. Count One

Several of the defendants argue that Count One of the Complaint fails to state a claim on which relief can be granted because it ambiguously refers to a deprivation of Civil Rights under the "laws, statutes, the United States Constitution, and the Constitution of the Commonwealth of Virginia." Compl. ¶ 15. Although Count One is not a model of clarity, a careful reading of the allegations therein reveals Plaintiff's intent to assert a claim against the City Defendants pursuant to 42 U.S.C. § 1983. Because Count Seven of the Complaint also asserts such a § 1983 claim, Count One is addressed below, along with Count Seven, in Part D of the Court's discussion of the issues.

### B. Counts Two through Six - City Defendants[5]

The City Defendants assert that Counts Two through Six of the Complaint fail to state a claim on which relief can be granted because the City Defendants are shielded from liability for state-law torts based on the doctrine of sovereign immunity. It is well-established that sovereign immunity is "alive and well" in Virginia and that such doctrine extends to a city

---

[5] Plaintiff states in her briefs in opposition to the motions to dismiss that it is "no longer relevant" whether Virginia law affords her a right to relief as all Defendants are subject to liability under 42 U.S.C. § 1983 and 1988. Because the Court is unclear whether Plaintiff intends such statement as an express withdrawal of her state law claims, the Court does not consider such claims to be withdrawn.

within the Commonwealth with respect to the city's performance of "governmental functions." Niese v. City of Alexandria, 264 Va. 230, 238, 564 S.E.2d 127, 132 (2002); Gedrich v. Fairfax Cnty. Dept. of Family Services, 282 F. Supp. 2d 439, 473-74 (E.D. Va. 2003).[6]   Furthermore, it is axiomatic that the maintenance of a police department is a "governmental function." Niese, 264 Va. at 239, 564 S.E.2d at 132; see Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999) ("[I]t is plain that [sovereign immunity] extends to municipalities in the exercise of their governmental functions, one of which is certainly the maintenance of a police force.") (internal citation omitted).

Virginia adheres to the principle that a city's sovereign immunity for torts allegedly committed by police officers during the course of their employment is broad enough to render such city immune from liability for all forms of torts, including intentional torts. Niese, 264 Va. at 239, 564 S.E.2d at 133; Harrison v. Prince William Cnty. Police Dept., 640 F. Supp. 2d 688, 712 (E.D. Va. 2009).   Accordingly, here, the City of Newport News is immune from liability as to Counts Two through Six of the Complaint because each of such counts alleges a

---

[6] Although the Commonwealth has abrogated some of its sovereign immunity pursuant to the Virginia Tort Claims Act, the Act "expressly disclaims any effort 'to remove or in any way diminish the sovereign immunity of any county, city, or town in the Commonwealth.'" Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999) (quoting Va. Code Ann. § 8.01-195.3) (emphasis added).

Virginia tort.

Turning to Fox and Morgan, regardless of whether they, like the City, are immune from liability for all state-law torts alleged in the Complaint,[7] Fox and Morgan are not named or otherwise implicated in Counts Two through Five of the Complaint. Accordingly, Counts Two through Five necessarily fail to state a claim against Fox or Morgan.

As to the allegations in Count Six, when read in conjunction with the preceding paragraphs in the Complaint, Count Six appears to allege that Fox and Morgan were negligent for failing to implement training and supervision procedures necessary to ensure that Newport News Police officers do not use excessive force during the course of arrests. However, as discussed immediately below, sovereign immunity shields both Fox and Morgan from liability as to Count Six because all city employees, regardless of their job title, are immune from

---

[7] In Pigott v. Ostulano, 74 Va. Cir. 228 (Norfolk, 2007), the Circuit Court's opinion suggests that a city's broad sovereign immunity from liability for all state-law torts committed by city police officers may also operate to render high-level city officials immune from liability. Specifically, in Pigott, the court held that a Police Chief and Captain, "two principal commanding officers of [the City's] Police Department," were immune from liability for torts committed by subordinate officers because "officials who oversee the operation of [the City's] Police Department are cloaked with the same sovereign immunity that protects the City." Id. at 230. Here, because Fox and Morgan are high-ranking supervisory officials, Pigott suggests that both may, like the City, be automatically shielded from liability for all state-law torts allegedly committed by subordinate police officers.

liability for <u>ordinary</u> negligence associated with qualifying discretionary decisions. <u>See</u> <u>Messina v. Burden</u>, 228 Va. 301, 313-14, 321 S.E.2d 657, 663-64 (1984); <u>James v. Jane</u>, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980); <u>Shaffer v. City of Hampton,</u> <u>Va.</u>, 780 F. Supp. 342, 344 (E.D. Va. 1991).

In determining whether ordinary negligence sovereign immunity extends to a specified city employee's actions, the court must consider: "(1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of control and direction exercised over the employee by the government; and (4) whether the act in question involved the exercise of discretion and judgment." <u>Colby v. Boyden</u>, 241 Va. 125, 129, 400 S.E.2d 184, 186-87 (1991) (citing <u>Messina</u>, 228 Va. at 313, 321 S.E.2d at 663). Applying such test, here, Fox's and Morgan's involvement in implementing policies, procedures, and training for the City's police force satisfies the first two prongs of the test because high-level oversight of the police force is clearly a necessary governmental function in which the City, as well as the Commonwealth, has a vital interest. As to the second two prongs, Fox's and Morgan's positions as Chief of Police and City Manager necessarily ceded to them great control, and their decisions regarding training and supervision of subordinate police officers undeniably involve the exercise of

their judgment and discretion.  Accordingly, both Fox and Morgan are immune from liability for allegations of ordinary negligence associated with their decisions regarding supervising and training of subordinate police officers.  See Guerrero v. Deane, No. 1:09cv1313, 2010 WL 670089, at *13-14 (E.D. Va. Feb. 19, 2010) (unpublished) (finding that the allegations against the police chief were limited to challenging the "hiring, training and supervising [of] his subordinate officers," and that because the chief "serves in a high position that involves the exercise of judgment and discretion and the execution of important government functions, [u]nder Messina, sovereign immunity protects him from liability for negligence committed in the exercise" of such discretion); Savage v. County of Stafford, Va., 754 F. Supp. 2d 809, 817 (E.D. Va. 2010) (quoting Glasco v. Ballard, 249 Va. 61, 64-65, 452 S.E.2d 854, 856 (1995)) ("Under Virginia law, ordinary negligence claims cannot lie against a law enforcement officer who was engaged in 'an essential governmental function involving the exercise of discretion and judgment' at the time of the act alleged to be negligent.").

Finally, even if Fox and Morgan were not shielded by sovereign immunity for ordinary negligence regarding their failure to train and/or properly supervise subordinate officers, Count Six would be dismissed as to both Fox and Morgan based on Plaintiff's failure to satisfy the applicable pleading standard.

12

As previously discussed, Plaintiff is required to assert "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, and here, she has failed to advance any facts supporting the bald assertion that Fox and Morgan were negligent in their training or supervision of subordinate police officers.[8] See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.).

Accordingly, the City Defendants' motion to dismiss is granted with respect to Counts Two through Six of the Complaint based on such Defendants' sovereign immunity and/or Plaintiff's failure to assert, or failure to adequately assert, a cause of action against each of the City Defendants.

### C. Counts Two through Six - Gayle and Briggs

### 1. Count Two – Intentional Infliction of Emotional Distress

Defendants Gayle and Briggs argue that Count Two, alleging intentional infliction of emotional distress, fails to advance sufficient facts to state a claim on which relief can be granted.   Intentional infliction of emotional distress is a disfavored cause of action in Virginia.   Ruth v. Fletcher, 237

---

[8] Similarly, even if Count Six can be construed as attempting to allege that Fox and Morgan were grossly negligent, such claim would fail under Twombly as plaintiff offers no facts that would support a finding of gross negligence.

Va. 366, 373, 377 S.E.2d 412, 415 (1989); see also Weth v. O'Leary, __ F. Supp. 2d. __, 2011 WL 2693178, at *5 (E.D. Va. July 11, 2011) ("Intentional infliction of emotional distress is a highly disfavored claim in the Fourth Circuit . . . ."). In order to recover on such claim, a plaintiff must prove:

> (1) "the wrongdoer's conduct was intentional or reckless"; (2) "the conduct was outrageous and intolerable"; (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress"; and (4) "the emotional distress was severe."

Hatfill v. The New York Times Co., 532 F.3d 312, 325-26 (4th Cir. 2008) (quoting Womack v. Eldridge, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974)).

Here, a review of the Complaint reveals that Plaintiff fails to plead facts sufficient to state a plausible right to relief on this ground, most notably by her failure to allege any facts demonstrating "outrageous and intolerable" conduct. See Russo v. White, 241 Va. 23, 27, 400 S.E.2d 160, 162 (1991) (indicating that a plaintiff must demonstrate that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"); Harris v. Kreutzer, 271 Va. 188, 204, 624 S.E.2d 24, 33-34 (2006) ("Insensitive and demeaning conduct does not equate to outrageous behavior," and allegations of "tortious or even criminal" intent are likewise insufficient to establish

14

outrageous conduct) (internal citation omitted). Notably, Plaintiff's own version of events fails to detail any offensive, abusive, or outrageous conduct or statements made by officers, and instead states with minimal detail that Plaintiff was quickly arrested, handcuffed, and placed in a police car.[9] Compl. ¶ 11. Although Plaintiff states that Officer Briggs ignored her pleas to remove or loosen her handcuffs, she offers no details or aggravating facts that suggest that the use of tight handcuffs during the course of her arrest could reasonably be viewed as "atrocious" or "going beyond all possible bounds of decency."[10] Furthermore, even though Briggs' brief squarely attacks Plaintiff's failure to allege any outrageous conduct, Plaintiff fails to defend the sufficiency of such count and fails to cite a single case suggesting that the conduct set forth in the Complaint rises to the level necessary to even approach the "extreme and outrageous" standard applicable to the Virginia tort of intentional infliction of emotional distress.[11]

---

[9] Plaintiff's Complaint is devoid of facts indicating that any officer threatened her, used inappropriate language, struck her, embarrassed her, bore her any ill will, or had any other reason to intentionally target Plaintiff for mistreatment.

[10] Furthermore, as to Gayle, Plaintiff fails to allege that Gayle handcuffed her or was present when she repeatedly complained of her handcuffs being too tight.

[11] Plaintiff's briefs in opposition to dismissal argue that applicable law permits a successful plaintiff in a § 1983 action to recover for emotional distress. This argument, however, misses the mark regarding the dismissal motions. Briggs and the City Defendants challenge plaintiff's failure to adequately

Plaintiff likewise fails to state a claim by advancing the bald conclusion that "all actions and words of the Newport News policemen alleged above were intentional and reckless with the specific purpose of inflicting emotional distress," Compl. ¶ 17, as such statement falls far short of the pleading standard under Twombly and its progeny.  To the contrary, this is precisely the type of unsubstantiated conclusory statement that fails to satisfy the applicable pleading standard.  Accordingly, Gayle's and Briggs' motions to dismiss Count Two are granted.

### 2. Counts Three through Five – Assault, Battery, and False Imprisonment

Defendant Gayle seeks dismissal of Counts Three through Five of the Complaint, respectively alleging assault, battery, and false imprisonment, based on Plaintiff's failure to either specifically name Gayle in such counts or otherwise demonstrate that Gayle participated in Plaintiff's arrest.  Additionally, both Gayle and Briggs seek dismissal of such counts based on their assertion that Plaintiff's own facts demonstrate that Briggs had a reasonable basis for arresting plaintiff.

Assault requires an act "that creates in [another] person's mind a reasonable apprehension of an imminent battery." Koffman

---

plead an independent state-law tort claim for intentional infliction of emotional distress.  The resolution of such a pleading deficiency is unrelated to whether Plaintiff can ultimately demonstrate that her damages, recoverable under § 1983, include compensable emotional suffering.

v. Garnett, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003).  "The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." Id.  "False imprisonment is the restraint of one's liberty without any sufficient legal excuse." Lewis v. Kei, 281 Va. 715, 724, 708 S.E.2d 884, 890 (2011).

### a. Sergeant Gayle

Here, Plaintiff fails to state a plausible right to relief as to Sergeant Gayle in Counts Three, Four, and Five, as she fails to allege that Gayle ever put her in fear of being touched, actually touched Plaintiff, restricted Plaintiff's movements in any way, or otherwise directed another officer to touch or restrict Plaintiff's movements.[12]  On the contrary, Plaintiff clearly states in her Complaint that Officer Briggs was the only individual that ever touched her or otherwise restricted her movements at the scene of her arrest. Plaintiff's briefs in opposition to dismissal confirm her position regarding the relevant facts, as she states therein

---

[12] These counts fail to state a claim against Gayle under the doctrine of respondeat superior because Plaintiff's facts establish that Briggs made the discretionary decision to arrest her; therefore, he was plainly not performing a ministerial task on behalf of Sergeant Gayle. See First Virginia Bank-Colonial v. Baker, 225 Va. 72, 78-79, 301 S.E.2d 8, 12 (1983) (indicating that although public officials may not be immune from liability for their subordinates' performance of ministerial duties, they are immune from liability for their subordinates' discretionary decisions).

that Officer Briggs witnessed Plaintiff touch her husband's hand, Officer Briggs stated that such act was an assault and battery, and Officer Briggs placed Plaintiff under arrest. (Pl. Opp. to Dismissal 2, Dkt. No. 13). Furthermore, the Complaint fails to even allege that Gayle was present during Plaintiff's transport to the police station, nor does it allege his presence at the police station. Accordingly, Counts Three, Four, and Five are dismissed against Gayle as Plaintiff fails to state a plausible right to relief.

### b. Officer Briggs

Plaintiff's Complaint alleges that, without justification, Officer Briggs placed her under arrest, physically restrained her through the use of handcuffs, and placed her in a police vehicle and later in a holding cell. Defendant Briggs responds by arguing that Counts Three, Four, and Five fail to state a claim because he had a good faith and reasonable belief in the validity of the arrest. Specifically, Briggs argues that because Plaintiff admits that she touched her husband's hand during the course of a domestic argument, "[t]he Complaint leaves no question that Plaintiff elevated the confrontation with her husband from a lock-out dispute to one involving physical touching." (Briggs' Opp. Brief 7, Dkt. No. 9) (emphasis added).

Although the Court recognizes that Briggs is shielded from

tort liability for wrongful arrest if he had a "good faith and reasonable belief" that a crime was committed in his presence, DeChene v. Smallwood, 226 Va. 475, 479, 311 S.E.2d 749, 751 (1984) (citations omitted), at this early stage in the litigation, the facts do not support such a finding.  Rather, viewing the facts <u>in a light most favorable to Plaintiff</u>, as required of the Court in this procedural posture, the Court must assume that Plaintiff, in a calming manner, called her husband "Honey," asked him "please don't do this," and justifiably touched him on the wrist in a non-threatening manner to help calm him down. Compl. ¶ 10.  As there are no facts alleged suggesting that such touch <u>elevated</u> the dispute, and the facts alleged instead only indicate that Plaintiff's non-threatening touch sought to <u>diffuse</u> the tension, Plaintiff sufficiently alleges that Briggs lacked justification to handcuff her and place her under arrest.  Accordingly, the Complaint adequately states a plausible right to relief against Briggs for assault,[13] battery, and false imprisonment.  Briggs' motion to dismiss is therefore denied as to Counts Three, Four, and Five.

---

[13] Although Plaintiff's narrative states that she was handcuffed "without warning," thereby eliminating any opportunity for Plaintiff to fear an imminent battery, Plaintiff's facts detail several instances when she was touched by Briggs, such as being placed in the police car, and placed in the holding cell. Accordingly, it would be premature to dismiss the assault count at this time solely based on Plaintiff's admission that the initial touching was "without warning."

### 3. Count Six – Negligence

As above, Defendant Gayle seeks dismissal of Count Six, alleging negligence, based on Plaintiff's failure to assert that Gayle participated in her arrest.  Defendant Briggs seeks dismissal of such count contending that he is shielded by sovereign immunity for ordinary negligence, and that Plaintiff fails to allege sufficient facts to state a claim for gross negligence.

It is well-established that a city's immunity from state-law tort claims extends to claims against police officers for ordinary negligence occurring during the arrest of a suspect. See Savage, 754 F. Supp. 2d at 817 (indicating that, in Virginia, law enforcement officers are immune from liability for ordinary negligence for acts committed while exercising judgment in the performance of essential police functions); Glasco, 249 Va. at 64-65, 452 S.E.2d at 856 (finding a defendant deputy sheriff immune from a claim of ordinary negligence because the facts surrounding the shooting of a suspect demonstrated that the defendant "was engaged in an essential governmental function involving the exercise of discretion and judgment").  Here, however, Plaintiff appears to argue in her rebuttal briefs that the Complaint alleges both ordinary and gross negligence,

thereby overcoming any sovereign immunity defense.[14]  See Colby, 241 Va. at 130, 400 S.E.2d at 187 (explaining that sovereign immunity shields officers from ordinary negligence, but not from gross negligence).

Under Virginia law, "gross negligence" refers to the "degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another." Frazier v. City of Norfolk, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987).  Stated differently, "Gross negligence amounts to the absence of slight diligence, or the want of even scant care."  Id.  It is negligence to such a degree that "would shock fair minded men although something less than willful recklessness." Ferguson v. Ferguson, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971).  Because the Court concludes that Gayle and Briggs effectively assert immunity from ordinary negligence, the Court considers individually whether Plaintiff has stated a plausible right to relief based on Gayle's and Briggs' alleged gross negligence.

---

[14]  The Complaint expressly alleges gross negligence based on Briggs' acts and Gayle's failure to intervene, but thereafter references "wanton, willful and reckless" conduct undertaken by two Police Departments in cities other than Newport News against an individual not otherwise named in the Complaint.  The Court assumes that such references are the result of an editing error, and construes Count Six as attempting to assert that Gayle and Briggs were grossly negligent.

### a. Sergeant Gayle

Plaintiff fails to set forth any facts in the Complaint, nor cite any relevant law in her briefs in opposition to dismissal, that suggest that she has a plausible right to relief against Gayle for gross negligence. Count Six does not mention Gayle by name nor does it, or any prior factual assertion in the Complaint, detail in what way Gayle's action or inaction was grossly negligent. As previously noted, the Complaint never asserts that Gayle directed Officer Briggs to act, nor does it claim that he took charge of the scene. Furthermore, Plaintiff fails to allege that Gayle was even present in the police car or at the police station. At most, the Complaint asserts that Gayle was present when Briggs arrested Plaintiff and that Gayle failed to take "corrective action" upon observing Officer Briggs arrest Plaintiff. Compl. ¶¶ 6, 11-12, 26.

Even assuming that Plaintiff is correct that Briggs lacked an adequate legal justification to arrest her, the fact remains that Plaintiff barricaded her husband out of their home, resulting in him breaking into the rear of the residence with a crowbar. Regardless of Plaintiff's subjective intent, she thereafter physically touched her husband. Justified or not, Briggs' split-second decision to intervene in the charged environment of the instant domestic dispute does not demonstrate "an utter disregard of prudence" and is a far cry from an act so

22

unreasonable that it "would shock fair minded men." Ferguson, 212 Va. at 92, 181 S.E.2d at 653; see Waterman v. Batton, 393 F.3d 471, 476-77 (4th Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)) ("Because 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided.").[15] Accordingly, as Plaintiff fails to sufficiently allege that Briggs was grossly negligent in arresting her, and fails to even allege that Gayle was present at the police station or during her transport thereto, Gayle's motion to dismiss Count Six is granted.

### b. Officer Briggs

As discussed immediately above, Plaintiff's own facts demonstrate that Officer Briggs, even if mistaken and/or negligent in deciding to arrest Plaintiff, was not grossly negligent in deciding to effectuate such arrest. In contrast, Plaintiff appears to have asserted sufficient facts to state a

---

[15] The applicable Virginia Statute states, in relevant part, that:

> A law-enforcement officer having probable cause to believe that a [battery against a family member] . . . has occurred shall arrest and take into custody the person he has probable cause to believe, based on the totality of the circumstances, was the predominant physical aggressor . . . .

VA Code § 19.2-81.3.

claim that Briggs was grossly negligent <u>in refusing to loosen Plaintiff's handcuffs</u> in that: (1) Plaintiff is 67 years old; (2) there are no facts suggesting that Plaintiff resisted arrest or attempted to escape; (3) there are no aggravating facts regarding Plaintiff's dangerousness; (4) Plaintiff repeatedly complained to Briggs of severe pain and informed him that her handcuffs were so tight that she was losing feeling in her hand and fingers; and (5) Briggs left Plaintiff in the excessively tight handcuffs for over thirty minutes <u>after</u> she had been secured in a holding cell at the police station.  Assuming that the above facts are true, as the Court must at this stage in the proceedings, Plaintiff has sufficiently alleged that Officer Briggs demonstrated an "utter disregard of prudence" in failing to even check on Plaintiff's well-being after she was secured in a cell and repeatedly pleaded for relief from severe pain. Accordingly, the Court grants Briggs' motion to dismiss that portion of Count Six involving his decision to arrest Plaintiff, and denies Briggs' motion to dismiss that portion of Count Six involving his refusal to loosen Plaintiff's handcuffs.

### D. Count Seven

In Count Seven of the Complaint, Plaintiff asserts a claim seeking relief pursuant to 42 U.S.C. § 1983.  Count Seven appears to be directed at Gayle and Briggs, and it expressly cites to § 1983.  Count One does not expressly reference § 1983;

however, as previously indicated, it appears to be directed at
the City Defendants, and it alleges a deprivation of civil
rights under color of state law, in violation of the "laws,
statutes [and] the United States Constitution . . . ." Compl. ¶
15.[16]  It is beyond dispute that the Complaint is "not a model of
the careful drafter's art"; however, even post-Twombly, a
complaint need not skillfully articulate the precise legal
theory on which relief is sought as long as the facts presented
therein plausibly state an identifiable right to relief.
Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011).  Although this
Court does not doubt that a motion for a more definite statement
regarding Count One would have merit, dismissal of Count One is
not appropriate solely based on its lack of clarity.  Rather,
when considered in conjunction with the preceding factual
narrative, Count One sufficiently reflects an attempt to state a
claim for relief under § 1983 and the Fourth Amendment to the
United States Constitution.  Accordingly, Count One is construed
as seeking to assert a § 1983 claim against the City Defendants,

---

[16] The broad language of Count One also references violations of
Virginia's statutes and constitution; however, Plaintiff fails
to indicate what Virginia statute or constitutional provision
provides a right to relief.  As this Court is unaware of any
cause of action under Virginia law to which Count One could be
referring to assert a viable claim, and in any case Plaintiff
has not plausibly asserted such a claim, Count One is construed
solely as asserting a claim under 42 U.S.C. § 1983 and the
Fourth Amendment to the United States Constitution.

and Count Seven is construed as seeking to assert a § 1983 claim against defendants Gayle and Briggs.

Under 42 U.S.C. § 1983, a plaintiff may maintain a private right of action if a person, acting under color of state law, deprives the plaintiff of rights secured by the United States Constitution.  Wahi v. Charleston Area Medical Center, Inc., 562 F.3d 599, 615 (4th Cir. 2009).  Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

The United States Supreme Court has held that municipalities and other local government entities are "persons" subject to suit under § 1983.  Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  When a § 1983 claim is asserted against a municipality, or a municipal supervisor in his or her official capacity, two issues much be addressed: "'(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for

26

that violation.'" <u>Covenant Media of S.C., L.L.C. v. City of N.</u>
<u>Charleston</u>, 493 F.3d 421, 436 (4th Cir. 2007) (quoting <u>Collins</u>,
503 U.S. at 120).

Even if a court determines that there has been an
underlying constitutional violation committed by a municipal
employee, a municipality's liability "arises only where the
constitutionally offensive actions of employees are taken in
furtherance of some municipal policy or custom." <u>Walker v.</u>
<u>Prince George's Cnty.</u>, 575 F.3d 426, 431 (4th Cir. 2009)
(internal quotations omitted). "Section 1983 plaintiffs seeking
to impose liability on a municipality must, therefore,
<u>adequately plead and prove</u> the existence of an official policy
or custom that is fairly attributable to the municipality and
that proximately caused the deprivation of their rights."
<u>Jordan by Jordan v. Jackson</u>, 15 F.3d 333, 338 (4th Cir. 1994)
(emphasis added). Furthermore, a municipality's liability
cannot be premised on a theory of respondeat superior or
vicarious liability, but rather, "'[i]t is only when the
execution of the government's policy or custom . . . inflicts
the injury that the municipality may be held liable under §
1983.'" <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)
(quoting <u>Springfield v. Kibbe</u>, 480 U.S. 257, 267 (1987)
(O'Connor, J., dissenting)) (alteration in original).

Here, Plaintiff advances a § 1983 claim against all

Defendants.   Therefore,  the  Court  first  considers  whether Plaintiff's facts plausibly assert that Briggs deprived her of a right  secured  by  the  United  States  Constitution.   If  the  Court finds  that  Plaintiff  sufficiently  alleges  a  constitutional violation  committed  by  Briggs,  the  Court  must  consider  whether Plaintiff has pled sufficient facts to impute liability to Gayle and/or the City Defendants.

### 1. § 1983 Claim against Briggs

Plaintiff's  allegations  of  constitutional  violations  focus on  her  arrest  and  initial  detention,  requiring  the  Court  to determine  whether  such  allegations  substantiate  a  violation  of the  Fourth  Amendment.   See  Graham,  490  U.S.  at  394  (indicating that excessive force claims associated with an arrest of a "free citizen"  implicate  the  Fourth  Amendment).   The  Fourth  Amendment protects  "[t]he  right  of  the  people  to  be  secure  in  their persons . . . against unreasonable searches and seizures . . . ."  U.S.  Const.  amend.  IV.   However,  a  seizure  of  a  suspect  is not  "unreasonable"  if  a  police  officer  has  probable  cause  to believe  that  a  crime  has  been  committed  in  the  officer's presence.   Virginia v. Moore,  553  U.S.  164,  178  (2008);  United States v. Williams,  10  F.3d  1070,  1073-74  (4th  Cir.  1993).

"'Probable  cause,'  for  Fourth  Amendment  purposes,  means 'facts and circumstances within the officer's knowledge that are sufficient  to  warrant  a  prudent  person,  or  one  of  reasonable

caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"   Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992) (quoting Michigan v. De Fillippo, 443 U.S. 31, 37 (1979)). "Thus, the appropriate question is whether a reasonable police officer could have believed that arresting [the suspect] was lawful, in light of clearly established law and the information the officers possessed."   Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001).

Even if probable cause supports a warrantless arrest, the Fourth Amendment's protections also "include[] the right to be free of 'seizures effectuated by excessive force.'"   Henry, 2011 WL 2725816, at *4 (quoting Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006)).   In determining whether an arrest involved excessive force, "courts determine 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"   Id. (quoting Graham, 490 U.S. at 397).   In addressing whether an officer's actions are objectively reasonable, a court weighs the nature of the intrusion on the plaintiff's Fourth Amendment rights "against the countervailing governmental interests at stake," which requires an assessment of the severity of the predicate crime, the immediate threat posed by the arrestee, and whether he or

she resisted arrest or attempted to flee from officers.   Turmon
v. Jordan, 405 F.3d 202, 207 (4th Cir. 2005) (quoting Graham,
490 U.S. at 396).

Here, viewing the alleged facts in a light most favorable
to Plaintiff, as required of the Court, the Court cannot find
that Officer Briggs had probable cause to arrest Plaintiff.  The
facts, as presented by Plaintiff, support the inference that
Plaintiff gently touched her husband's wrist in an effort to
calm him down.  Accepting such facts as true, the Court cannot
conclude that a reasonable officer would believe that a battery,
that is, an unwanted and unjustified touching, had been
committed in his presence.

Furthermore, even if the Court were to assume that Briggs
had probable cause to arrest Plaintiff, Plaintiff nevertheless
advances sufficient facts to state a plausible right to relief
against Briggs based on the use of excessive force.  The
Complaint alleges that Officer Briggs over-tightened Plaintiff's
handcuffs to the point of cutting off her circulation,
repeatedly refused to respond to Plaintiff's pleas to loosen the
cuffs, and that Plaintiff suffered a serious and permanent
injury as a result.[17]   There does not appear to be a strong

_____

[17] Briggs argues in support of dismissal that it was reasonable
not to loosen Plaintiff's handcuffs because there was "no
outward indication" that Plaintiff had suffered a serious
injury.  (Briggs' Opp. Brief 14, Dkt. No. 9).  The facts,

countervailing governmental interest supporting the use of such force as the predicate crime at issue, a non-violent touching, is clearly not severe, the Complaint reveals no serious threat posed by Plaintiff, and she did not resist arrest or attempt to flee. Turmon, 405 F.3d at 207. Furthermore, Plaintiff alleges that she remained in the excessively tight handcuffs for thirty minutes after being placed in a holding cell at the police station, during which she repeatedly "begged" Officer Briggs to loosen or remove her cuffs. These facts are sufficient to allege a § 1983 claim for excessive force.[18]

---

however, as advanced by Plaintiff, fail to suggest that Briggs ever examined Plaintiff's condition.

[18] Some of the Defendants argue that allegations of tight handcuffs are necessarily insufficient to state a § 1983 claim. See Carter, 164 F.3d at 219 n.3 (finding that the plaintiff's claim that "her handcuffs were too tight and that an officer pushed her legs as she got into the police car-is so insubstantial that it cannot as a matter of law" support a Fourth Amendment claim). However, Carter, and the cases cited therein, establishes that excessive force claims stemming from the use of handcuffs fail as a matter of law only when a plaintiff's injuries are limited to minor scrapes or soreness. See Cooper v. City of Virginia Beach, Va., 817 F. Supp. 1310, 1314 (E.D. Va. 1993) (collecting excessive force cases involving the use of handcuffs and noting that "the presence, nature, and extent of any resulting injury constitute important elements in the reasonableness calculus"). In contrast, here, Plaintiff alleges that she lost feeling in her hand and fingers, that her pain caused her to repeatedly "beg" Briggs to loosen the cuffs, and that as a result of his failure to do so, Plaintiff suffered permanent injuries that resulted in her loss of income. See Morrison v. Board Of Trustees Of Green Twp., 583 F.3d 394, 401 (6th Cir. 2009) ("The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure," and to recover a plaintiff must prove: "(1) he or she complained the handcuffs were too tight; (2) the officer ignored

Finding Plaintiff's allegations sufficient to state a § 1983 claim against Briggs, the Court must consider whether the doctrine of qualified immunity shields Briggs from liability. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, __ F.3d __, 2011 WL 2725816, at *4 (4th Cir. July 14, 2011).  In other words, municipal officers are immune from § 1983 liability unless a plaintiff's "§ 1983 claim satisfies a two-prong test: (1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was 'clearly established' such that a reasonable person would have known his acts or omissions violated that right." Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (citing Ridpath v. Board of Governors Marshall University, 447 F.3d 292, 306 (4th Cir. 2006)).  Qualified immunity provides "an immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), and therefore "should be resolved at the earliest possible stage of the litigation." Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987).

---

those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing").  The instant facts are therefore distinguishable from the facts of Carter, and sufficiently state a § 1983 excessive force claim.

Here, qualified immunity does not shield Briggs from liability for either Plaintiff's § 1983 claim challenging the constitutionality of her arrest or the § 1983 claim challenging the level of force allegedly used in effectuating such arrest. As discussed above, Plaintiff has sufficiently alleged a violation of her Fourth Amendment rights, i.e. that "the allegations, if true, substantiate a violation of a federal statutory or constitutional right." It is likewise apparent that, at the time of Plaintiff's arrest, it was "clearly established" that arresting a person for gently touching her spouse on the wrist or repeatedly refusing to check on a secured detainee's handcuffs after numerous pleas of severe pain violated such rights. See, e.g., Morrison v. Board of Trustees of Green Twp., 583 F.3d 394, 401 (6th Cir. 2009) (indicating that it is "clearly established" that the Fourth Amendment "prohibits unduly tight or excessively forceful handcuffing"). A reasonable officer thus would have known that the actions taken by Briggs violated Plaintiff's constitutional rights. Accordingly, Officer Briggs' motion to dismiss is denied with respect to Count Seven.

### 2. § 1983 Claim against Gayle

As discussed previously, Plaintiff fails to allege that Gayle actively participated in her arrest or in the alleged application of excessive force. However, because Plaintiff has

sufficiently alleged a constitutional violation committed by Officer Briggs, the Court must address whether such violation can somehow be attributed to Sergeant Gayle.

"As a general matter, a law officer may incur § 1983 liability only through affirmative misconduct." Randall v. Prince George's Cnty., Maryland, 302 F.3d 188, 202 (4th Cir. 2002). However, the Fourth Circuit recognizes a limited exception to such general rule whereby a law enforcement officer may be liable under § 1983 on the theory of "bystander liability." Id. at 203. Such concept is "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them," and is applicable if "a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act . . . ." Id.

Here, first considering Briggs' decision to arrest plaintiff, Plaintiff alleges that Gayle was present at the scene of her arrest, and that he "fail[ed] . . . to intervene and come to the aid of Hales, or take corrective action upon observing [Briggs'] misconduct . . . ." (Compl. ¶ 26). As the court has already determined that Plaintiff has sufficiently stated a § 1983 claim for an unreasonable seizure against Briggs, assuming the above facts to be true, the Court must similarly find that Plaintiff has stated a plausible right to relief against

34

Sergeant Gayle for failure to intervene. Furthermore, for the reasons discussed in the preceding section, Gayle is not shielded by qualified immunity.

Considering next the § 1983 claim regarding the use of excessive force, Plaintiff fails to state a claim against Gayle. Notably, the bystander liability test requires that the bystander officer witness his fellow officer's illegal act, and Plaintiff fails to allege that Gayle was present during transport to the jail, or at the jail, during which times Plaintiff repeatedly voiced her complaints about the manner in which she was handcuffed. Accordingly, Gayle's motion to dismiss the portion of Count Seven alleging an excessive force § 1983 claim is granted, but Gayle's motion to dismiss the portion of Count Seven alleging a "bystander liability" § 1983 claim regarding Plaintiff's arrest is denied. See id. at 204 n.23 (expressly recognizing that bystander liability is "applicable to cases of unjustifiable arrest"); Smith v. Ray, 409 Fed. Appx. 641, 648 (4th Cir. 2011) (unpublished) (applying the bystander liability test set forth in Randall and finding that none of the "bystander" officers could be held liable on the plaintiff's excessive force claim because they were not "present to witness the use of excessive force.").

### 3. § 1983 Claim against the City Defendants

In contrast to Briggs and Gayle, none of the City

Defendants were on the scene of Plaintiff's arrest. Plaintiff therefore fails to state a viable direct, or bystander § 1983 claim, against any of the City Defendants. Similarly, Plaintiff fails to state a § 1983 claim against the City Defendants on the theory of "supervisory liability." Pursuant to such theory, "when on notice of a subordinate's tendency to act outside the law, [supervisors are obligated] to take steps to prevent such activity." Randall, 302 F.3d at 203. Here, Plaintiff fails to allege any facts whatsoever indicating that Briggs had a "tendency to act outside the law."

Notwithstanding Plaintiff's failure to state a direct, bystander liability, or supervisory liability § 1983 claim against the City Defendants, a municipality is "subject to liability under section 1983 if the [plaintiff's] alleged injury was caused by an identifiable municipal policy or custom." Riddick v. School Bd. of City of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000). A policy or custom can be established through: (1) "an express policy"; (2) a decision by "a person with final policymaking authority"; (3) an omission, "such as a failure to properly train officers"; and (4) a practice so widespread that it constitutes a custom. Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003).

Although there are several ways to establish the existence of a policy or custom, a plaintiff seeking to attribute

36

liability based on such policy or custom must still satisfy "the usual requirements of notice pleading specified by the Federal Rules." Jordan, 15 F.3d at 339. Such pleading standard requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Francis, 588 F.3d at 193 (quoting Twombly, 550 U.S. at 555). It is insufficient for a plaintiff to present "'naked assertions' of wrongdoing" because without facts to support such conclusory statements, the unadorned claims fail to "cross 'the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557); see Revene v. Charles Cnty. Comm'rs, 882 F.2d 870, 875 (4th Cir. 1989) ("§ 1983 complaints which on critical elements of a claim merely recite legal conclusions wholly devoid of facts, may properly be dismissed for insufficiency of statement.") (internal quotation marks and citations omitted).

Here, Plaintiff alleges that the City and the Newport News Police Department have a "policy and custom . . . of using excessive and reckless force in dealing with citizens and in handling suspects . . . ." Compl. ¶ 15. Plaintiff fails, however, to present a single fact to support her conclusory statements regarding the existence of an official policy or custom related to the treatment of suspects by Newport News Police officers. Rather, Plaintiff advances the wholly

unsupported leap in logic that, because she was allegedly handled with excessive force, there must be a policy or custom, or lack of training, that led to such treatment.  Such "naked assertion" fails on its face.  See Revene, 882 F.2d at 875 (affirming the dismissal of a § 1983 claim alleging "a municipal policy of inadequate training" because there were "not supporting facts of even the most general nature to suggest any specific deficiencies in training" nor any facts suggesting that the incident at issue "was anything but an aberrational act by an individual officer"); Allen v. City of Fredericksburg, No. 3:09CV63, 2011 WL 782039, at *8 (E.D. Va. Feb. 22, 2011) (unpublished) (finding a complaint insufficient to state a cause of action against the city or its police department as it was "[c]ritically lacking" facts supporting the plaintiff's conclusory "failure to train theory").  Accordingly, the motions to dismiss Counts One and Seven filed by the City Defendants are granted.

### V. CONCLUSION

As set forth above, the motion to dismiss filed by the City Defendants is **GRANTED** in its entirety.  The motion to dismiss filed by Gayle is **GRANTED** as to all counts in the Complaint except the portion of Count Seven alleging § 1983 bystander liability regarding Plaintiff's arrest; Gayle's motion is **DENIED** with respect to such claim.  Officer Briggs' motion to dismiss

is **GRANTED** with respect to Counts One and Two, **DENIED** as to Counts Three, Four, Five and Seven, and **GRANTED** in part and **DENIED** in part as to Count Six.[19]

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September _30_, 2011

---

[19] Although Plaintiff includes a damages provision in the Complaint labeled "Count Eight," such provision is not an independent claim for relief, and it is therefore not addressed at this time. To the extent that Briggs' challenges Plaintiff's right to recover punitive damages, such challenge is denied at this time.